UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JOSEPH BLACK,

    Plaintiff,

    v.

LINCOLN NATIONAL LIFE INSURANCE,

    Defendant.

No. 16 C 5614

Judge Thomas M. Durkin

**MEMORANDUM OPINION AND ORDER**

Joseph Black alleges that Lincoln National Life Insurance violated the Employment Retirement Income Security Act ("ERISA") when it failed to pay him the proceeds of his late father's life insurance policy. R. 30. Lincoln National has moved to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). R. 39. For the following reasons, the motion is granted.

**Legal Standard**

A Rule 12(b)(6) motion challenges the sufficiency of the complaint. *See, e.g.*, *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels

and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Mann*, 707 F.3d at 877.

## Background

Black's father died on August 10, 2011. R. 30 ¶ 2. At the time of his death, Black's father was employed by Superior Air Ground Ambulance Service, and was insured under Superior Air's Lincoln Financial Group Insurance Policy, which provided $125,000 to the policy's beneficiaries. *Id.* ¶¶ 2-3. The policy included both $15,000 in Basic Life coverage and $110,000 in voluntary life coverage. R. 40-1; R. 40-2; R. 40-3; R. 40-4; R. 40-5; R. 40-6. The Basic Life policy included a three-year contractual limitations period for bringing civil suits. R. 40-1 at 25.

Black alleges that his stepmother fraudulently obtained the proceeds of his father's life insurance policy and deposited them into an MB Financial bank account. *See* R. 30. In September 2013, Black sued Lincoln National, MB Financial Bank, and his stepmother in the Circuit Court of Cook County, Illinois to recover the proceeds. *See* R. 11-1. Lincoln National moved to dismiss, arguing that Black's

claims were preempted by ERISA. *See* R. 15-1 at 4-14. Black did not file a response, and the state court granted the motion. *See* R. 11-2 at 2. The state court eventually resolved Black's claims against his stepmother and MB Financial, by ordering MB Financial to turn over the remaining $37,700.54 balance in the bank account to Black, and by entering a $100,000 judgment against his stepmother for "conversion and fraud." *See* R. 11-3; 11-4.

Black then filed another complaint in Illinois state court on January 12, 2016, seeking to recover the full $125,000 amount of the policy benefits from Lincoln National. R. 1. Black alleged that Lincoln National violated ERISA and breached the terms of the policy when it paid the proceeds to his stepmother. *Id.* Lincoln National removed that complaint to this Court in May 2016, and filed a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). R. 10. The Court granted the motion as to the breach of contract claim, but denied it with respect to the ERISA claim. R. 18 (*Black v. Lincoln Nat. Life Ins.*, 2016 WL 6582582 (N.D. Ill. Nov. 7, 2016)).

Black then filed an amended complaint on March 15, 2017. R. 30. Black alleges in his amended complaint that Lincoln National violated ERISA by paying the proceeds of the life insurance policy to his stepmother, who allegedly obtained them by forging both his signature and his father's signature on various policy documents. R. 30 ¶¶ 5-7. Specifically, Black alleges that his stepmother forged his father's signature on the enrollment form naming the minor daughter of Black's stepmother and father, as a 50% co-beneficiary on the $110,000 Voluntary Life

3

policy. R. 30 ¶ 6. Additionally, Black alleges that his stepmother forged Black's signature on a claim form in order to have Lincoln National deposit the proceeds of the Voluntary Life policy into the MB Financial joint bank account. R. 30 ¶ 5.

## Analysis

Lincoln National argues that Black's claims should be dismissed for the following reasons: (1) Black fails to allege a viable legal theory to support his claim for benefits under the Basic Life policy; (2) the Basic Life policy's three-year contractual limitation provision makes Black's claim untimely; (3) Black's forged Enrollment Form theory rests on the false premise that ERISA imposes strict liability on administrators for losses due to forged signatures; and (4) Black's claim against Lincoln National for payment of the $55,000 Voluntary Life Benefit also depends on that same incorrect premise.

### I. Basic Life Policy

Lincoln National argues that Black fails to allege a right to the Basic Life policy's proceeds. Because the Basic Life policy and the voluntary life policy documents, enrollment forms, and claim forms are central to and form the basis of Black's claim, the Court may take judicial notice of these documents. *See Citadel Grp. Ltd. v. Wash. Reg'l Med. Ctr.*, 692 F.3d 580, 591 (7th Cir. 2012).

Black alleges that he is the "sole beneficiary" of his late father's entire $125,000 life insurance coverage, including both the $15,000 Basic Life coverage and the $110,000 voluntary life coverage. However, although Black claims a right to the entire $125,000, he makes no allegations with regard to the Basic Life Policy in

particular. Rather, all of his allegations focus on allegedly fraudulent signatures relevant to distribution of the $110,000 Voluntary Life proceeds. Moreover, Black does not address Lincoln National's argument that he is not entitled to the Basic Life proceeds. This is likely because the express terms of the Basic Life policy enrollment form name his stepmother, Miavria Black, as the "100%" beneficiary. R. 40-5. Additionally, Black admitted that "Ms. Black was the intended beneficiary of $15,000 in benefits" in his state court complaint against Lincoln National. R. 40-7 ¶ 2. Accordingly, to the extent Black intended to make a claim for the $15,000 Basic Life Policy proceeds, that claim is not plausible, and it is dismissed.[1]

## II. Voluntary Life Policy

Black alleges that his step-mother forged two signatures in order to take the entire $110,000 benefit of the Voluntary Life policy. First, Black alleges that she forged his father's signature to add their daughter as a 50% beneficiary under the policy. Second, Black alleges that she forged his signature in order to cause Lincoln National to deposit the proceeds of the policy into an MB Financial bank account he owned jointly with his step-mother, thereby giving her access to his share of the proceeds.

---

[1] In light of the Court's decision it is not necessary to reach Lincoln National's argument that any claim Black might make based on the Basic Life policy would be untimely. Moreover, Lincoln National's analysis did not address whether Black's state court complaint tolled the contractual limitation provision, which would be necessary to determine the timeliness of such a claim. *See Jamison v. Aetna Life Ins. Co.*, 2015 WL 6711081, at *3 (N.D. Ill. Nov. 2, 2015) ("Although broad in application, equitable tolling can be defined narrowly as the doctrine that if a plaintiff files a suit first in one court and then refiles in another, that statute of limitations does not run while the litigation is pending in the first court if various requirements are met. Equitable tolling can apply in ERISA cases . . . .").

A.  Applicable Law

Lincoln National argues that Black fails to state a cognizable claim based on allegedly forged signatures because ERISA administrators do not have a duty to investigate the validity of claim forms, but must act pursuant to the written documents. When an ERISA "plan is established, the administrator's statutory duty is to see that the plan is maintained pursuant to that written instrument." *Heimeshoff*, 134 S. Ct. at 612 (citing 29 U.S.C. § 1102(a)(1)); s*ee also Kennedy v. Plan Adm'r for DuPont Sav. and Inv. Plan*, 555 U.S. 285, 288, 300 (2009) (noting that ERISA "generally obligates administrators to manage ERISA plans in accordance with the documents and instruments governing them," and "ERISA provides no exemption from this duty when it comes time to pay benefits"). The principle that the written terms of the plan govern its administration is the crux of "a system that is [not] so complex that administrative costs, or litigation expenses, unduly discourage employers from offering [ERISA] plans in the first place." *Heimeshoff*, 134 S. Ct. at 612. Absent such a bright-line rule, plan administrators would be "forced to 'examine a multitude of external documents that might purport to affect the dispensation of benefits,' and be drawn into litigation." *Kennedy*, 555 U.S. at 301.

Several courts have interpreted the principle set forth in *Kennedy*—that ERISA requires employee benefits plans to be "established and maintained pursuant to [the] written instrument," 29 U.S.C. § 1102(a)(1)—as meaning that administrators do not have a duty to authenticate signatures or look to outside

documents when disbursing benefits. In *Dahl v. Aerospace Employees' Ret. Plan of the Aerospace Corp.*, for example, the court rejected the argument that an ERISA administrator has a duty to investigate the validity of beneficiary designations. 2015 WL 6604799, at *4 (E.D. Va. Oct 29, 2015). The court reasoned that "injecting a fraud analysis into the . . . plan beneficiary designation process would create uncertainty in pension plan administration." *Id.* Because the Supreme Court emphasized the "importance of certainty in ERISA beneficiary designations" in *Kennedy*, the court in *Dahl* recognized that requiring plan administrators to also ensure the absence of fraud in a beneficiary designation could force administrators to make precisely the "factually complex and subjective determinations that *Kennedy* expressly sought to avoid." *Id.* (quoting *Kennedy*, 55 U.S. at 302).

Similarly, in *Foster v. PPG Industries*, the court held that the plan administrator was not liable for fraudulently withdrawn benefits, but was "entitled to rely on the legitimacy of the electronic request" consistent with the plan's established procedures. 693 F.3d 1226, 1236 (10th Cir. 2012). Because the administrator had followed procedures and acted in accordance with the written document, there was no obligation "to inquire further as to the actual identity of the requester." *Id.*

In *Jackman Financial Corp. v. Prudential Insurance Co.*, the court held that the insurance company discharged its statutory duty under ERISA by paying the beneficiary designated on the life insurance policy. 2010 WL 3800892, at *5 (N.D. Ill. Sept. 22, 2010). The court reasoned that Prudential was "obligated to pay the life

insurance proceeds in accordance with the documents and instruments governing the plan." *Id.* at *6.

The Tenth Circuit has applied this principle specifically to hold that an allegation that a beneficiary form was forged failed to state an ERISA claim as a matter of law. *See Yarbary v. Pringle, Oliver, Wallace & Bauer, LLP*, 584 Fed. App'x 918, 919 (10th Cir. 2014). The court explained that "[a] plan administrator that pays benefits in accord with the established plan procedures when it has 'no reason to suspect anything was amiss' is not obligated to inquire further." *Id.* (citing *Foster*, 693 F.3d at 1236-37 (10th Cir. 2012)); *see also In Re Thompson's Estate*, 426 N.E.2d 1, 2-3 (Ill. App. Ct. 1st Dist. 1981) (holding that "an insurer which pays proceeds to the named beneficiary is discharged from liability on the policy if it acted in good faith," which "might require . . . investigation when an insurer is aware of suspicious circumstances concerning a beneficiary"); *Iverson v. Scholl Inc.*, 483 N.E.2d 893 (Ill. App. Ct. 1985) ("The insurer's obligation of good faith requires a reasonable investigation by the insurer when it is aware of suspicious circumstances regarding a beneficiary. The obligation of good faith is not violated unless a reasonable investigation would have disclosed facts sufficient to defeat the named beneficiary's claim.").[2]

---

[2] Courts may look to "the emerging federal common law of ERISA, utilizing state law as the basis of the federal common law only to the extent that such state law is not inconsistent with congressional policy concerns." *Thomason v. Aetna Life Ins. Co.*, 9 F.3d 645, 650 (7th Cir. 1993).

### B. The Signature Adding Black's Step-Sister as a Beneficiary

Here, Lincoln National paid out the proceeds pursuant to the policy documents. According to the written terms of the Voluntary Life policy, Lincoln National must pay benefits to the beneficiary "as shown on [the plan participant's] enrollment card, unless changed." R. 40-2 at 11, 17; R. 40-3 at 27. The Voluntary Life enrollment form expressly names both Black and his step-sister as co-primary beneficiaries of the $110,000 voluntary life coverage. R. 40-6. Based on this document, Lincoln National paid the voluntary life benefits to Black and his step-sister as co-beneficiaries. Black does not allege that Lincoln National had any notice of suspicious circumstances regarding the allegedly forged signature on the enrollment form, and there is nothing suspicious on its face about a father adding his daughter as a beneficiary to his life insurance policy. Accordingly, Lincoln National is discharged from further liability after paying out the benefits pursuant to the written document.

### C. The Signature Directing Deposit Into the Joint Account

The authority that plan administrators do not have a duty to investigate signatures designating beneficiaries is equally applicable to signatures on other aspects of plan documents such as deposit instructions. ERISA requires plan administrators to establish and maintain every employee benefit plan pursuant to a written instrument, "specify[ing] the basis on which payments are made to and from the plan." *Kennedy*, 555 U.S. at 300. (citing 29 U.S.C. § 1102(b)(4)). This reliance on the written document "forecloses any justification for enquiries into nice

9

expressions of intent, in favor of . . . adhering to an uncomplicated rule." *Id.* at 301. (noting that less certain rules would force plan administrators to examine external documents that could potentially affect the dispensation of benefits and therefore be "drawn into" to litigation). Based on the rule set forth in *Kennedy*, there exists a "widespread principle that an insurer is discharged from all subsequent liability when it makes good faith payments to a purported beneficiary without notice of any competing claims" or possible forgery. *Crosby v. Crosby*, 986 F.2d 79, 83 (4th Cir. 1993).

Here, Black does not allege that Lincoln National had any notice of suspicious circumstances regarding the allegedly forged signature on the claim form. Black claims that the signature on the claim form is "clearly different" from his signature on his social security card and driver's license. R. 30 ¶ 5. But, Black does not argue that Lincoln National had this information and was aware of the alleged discrepancy before the claim was approved and the benefits were paid. Based on the claim form, Lincoln National paid Black's 50% share of the Voluntary Life policy into a joint bank account at MB Financial. R. 11-1 at 11-14. Accordingly, Lincoln National is discharged from further liability after paying out the benefits pursuant to the written document in good faith. Thus, Black's claim for payment of the voluntary life coverage is dismissed as a matter of law.[3]

---

[3] In light of the Court's decision, it is unnecessary to address Lincoln National's arguments regarding judicial estoppel, double recovery, and failure to join required parties.

## Conclusion

For the foregoing reasons, Lincoln National's motion to dismiss, R. 39, is granted with prejudice as the Court finds that the policy documents are unambiguous and the legal authority straightforward, such that repleading would be futile.

ENTERED:

_____
Honorable Thomas M. Durkin
United States District Judge

Dated: June 21, 2017